UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| SHERRY L. SCHRUDER,<br><br>    Plaintiff,<br><br>  v.<br><br>ARCHIE BANBURY, TAMI RHODES, GLENNA YOUNG, GORDON CRUICKSHANK, RAY MOORE, VALLEY COUNTY and JOHN DOES I-XX,<br><br>    Defendants. | Case No. 1:13-cv-00309-REB<br><br>**MEMORANDUM DECISION AND ORDER RE:**<br><br>**PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT (Docket No. 22)**<br><br>**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (Docket No. 23)** |

   Currently pending before the Court are (1) Plaintiff's Motion for Partial Summary Judgment (Docket No. 22), and (2) Defendants' Motion for Summary Judgment (Docket No. 23). Having carefully considered the record, participated in oral argument, and otherwise being fully advised, the Court enters the following Memorandum Decision and Order:

## I. RELEVANT BACKGROUND

   1.  On October 4, 2007, Plaintiff was hired as a Valley County Deputy Treasurer to work in the Treasurer's office and also assist Treasurer Glenna Young in performing human resource-related work. At that time, the Valley County Treasurer was responsible for managing Valley County's human resources. *See* Defs.' Stmt. of Undisp. Fact ("SOUF") Nos. 1-3 (Docket No. 23, Att. 2); Pl.'s Stmt. of Disp. Fact ("SODF") Nos. 1-2 (Docket No. 26).

**MEMORANDUM DECISION AND ORDER - 1**

2.      In early 2010, Valley County brought on Tami Rhodes, an independent contractor, to serve as its Human Resources Director.  *See* Defs.' SOUF No. 5 (Docket No. 23, Att. 2); Pl.'s SODF No. 2 (Docket No. 26).  The human resources responsibilities previously performed by the Valley County Treasurer were reassigned to Rhodes; Plaintiff stopped performing human resources-related work soon thereafter.  *See id.*

3.      On August 2, 2011, Plaintiff sent an email from her work email account to the Valley County Board of Commissioners (the "Board") and Valley County Clerk, Archie Banbury, informing them of "problems with bats" being faced by the Valley County Building Department:

> I left a message on Mr. Cruickshank's phone to let him know that the Building Dept. is having problems with Bats.  Today is the second one they have found this week.  Yesterday the bat was dead, this one today the bat was alive.  Just wanted to let you know as I feel this is a health issue if someone got bit by one.

*See* Defs.' SOUF Nos. 21-22 (Docket No. 23, Att. 2).

4.      On August 15, 2011, Mses. Young and Rhodes met with Plaintiff to inform her that she was being laid off.  *See id.* at No. 17.  Defendants describe the layoff as being the result of a legitimate reduction-in-force, owing to a downturn in the local economy and a corresponding 23% budget reduction for the fiscal year ending on September 30, 2012.  *See id.* at Nos. 6-17, & 24.  Plaintiff says that the budget reduction was a phony justification for her termination, and contends that she was really terminated because of her email about bats.  *See* Pl.'s SODF Nos. 3-4 & 10 (Docket No. 26).

5.      The Board did not grant Plaintiff any reinstatement preferences when she was terminated.  *See* Defs.' SOUF No. 18 (Docket No. 23, Att. 2).  Plaintiff applied for four positions with the County that came open after she was laid off – a Deputy Clerk position with the Valley

**MEMORANDUM DECISION AND ORDER - 2**

County Sheriff's Office, a Plat Clerk position with the Valley County Assessor's office, a

Deputy Recorder position with the Valley County Recorder's Office, and a Senior Deputy

Treasurer in the Valley County Treasurer's Office – but she was not re-hired. *See id*. at No. 19.

6.      Plaintiff's employment with Valley County was governed by the Valley County

Personnel Manual (the "Manual"). *See* Defs.' SOUF No. 4 (Docket No. 23, Att. 2); Pl.'s SOUF

No. 1 (Docket No. 22, Att. 1). The Manual reads in relevant part:

> § IV(A)(1)   Except as otherwise provided in this paragraph, employees of Valley County *will not be suspended without pay, demoted with an accompanying change in pay, or discharged from their positions except for cause related to performance of their job duties or other violations of this policy*. Cause shall be determined by the employee's supervisor/elected official and shall be communicated in writing to the employee when employee status is changed.
>
> *Only suspension without pay, demotion with change of pay, or discharge for cause shall be subject to the appeal procedure set forth in this personnel policy*. The appeal procedure is to be construed in a directory manner. . . . .
>
> Changes in employment status which are the result of budgetary needs, *reductions in force*, reorganization of work duties through transfer or reassignment, or general changes in the terms or conditions of employment or of benefit offerings *shall not be subject to the appeal procedure set forth herein* . . . .
>
> § IV(B)(13)  Employee assignments may be affected by reductions in force made due to economic conditions or to changes in staffing and workload. *The Board reserves the right to make any changes in work force or assignment of resources that it deems to be in the organization's best interests. The Board may also specify at the time reductions in force are made what reinstatement preferences may accompany the reductions.* Said reinstatement preferences may be tied to the classification of the employee or to specialized skills possessed by the employee.
>
> § VI(A)     When financial circumstances or changes of workload require, *Valley County reserves the right to reduce forces in such manner as it deems*

> *necessary to maintain the effective functioning of Valley County services*. Decisions about the functions to be reduced are not subject to the appeal procedure established by Valley County

§  VI(B)  Employees who leave Valley County employment *due to a reduction in force shall retain a first right to return in the event of work force rebuilding for one year from the date of their separation*. Employees shall retain a preference only for work for which they are fully qualified and for which available service requirements can be met.

Manual at pp. 9-10, 13, & 24-25 (attached as Ex. A to Pl.'s MPSJ) (Docket No. 22, Att. 3) (emphasis added).

7.      Plaintiff filed this lawsuit on July 16, 2013, seeking "damages as a result of Plaintiff's termination of public employment by Defendants and their subsequent failure to reinstate her." Compl., p. 2 (Docket No. 1). She makes the following federal and state claims against Defendants: (1) termination without due process (federal Count I), (2) failure to reinstate without due process (federal Count II), (3) violation of constitutional "free speech" (federal Count III), (4) termination without due process (state Count I), (5) failure to reinstate without due process (state Count II), and (6) retaliation against "freedom of speech" (state Count III). *See id.* at pp. 5-11.

8.      On February 26, 2014, Plaintiff filed her Motion for Partial Summary Judgment, asking for the Court to rule that she had a constitutional property interest in her employment relationship with Valley County. *See* Pl.'s MPSJ (Docket No. 22).

9.      On March 11, 2014, Defendants filed their Motion for Summary Judgment (effectively opposing Plaintiff's Motion for Partial Summary Judgment at the same time), arguing that each of Plaintiff's federal and state claims must be dismissed as a matter of law. *See* Defs.' MSJ (Docket No. 23).

**MEMORANDUM DECISION AND ORDER - 4**

## II. DISCUSSION

### A.    Motions for Summary Judgment: The Standard

Summary judgment is properly granted when no genuine and disputed issues of material fact remain, and when, viewing the evidence in a light most favorable to the non-moving party, the movant is clearly entitled to prevail as a matter of law.  *See* Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  The moving party bears the burden of showing that there is no material factual dispute, and the court must draw all reasonable inferences in favor of the party against whom summary judgment is sought.  *See Celotex*, 477 U.S. at 324.  Material facts which would preclude summary judgment are those which may affect the outcome of the case.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The relevant substantive law will determine which facts are material for purposes of summary judgment.  *See id*.

Where, as here, both parties move for summary judgment, the summary judgment standard does not change, and the court must evaluate each party's motion on the merits.  *See Farm Bureau Ins. Co. of Idaho v. Kinsey*, 234 P.3d 739, 742 (Idaho 2010) (citation omitted); *see also Nolan v. Heald College*, 551 F.3d 1148, 1154 (9th Cir. 2009) (applying traditional summary judgment standards to cross-motions for summary judgment in ERISA benefits denial case).  Where the moving party does not bear the burden of proof on an issue at trial, the moving party may discharge its burden of showing there is no genuine issue of material fact by demonstrating an "absence of evidence to support the nonmoving party's case."  *Celotex*, 477 U.S. at 325.  If the moving party establishes an absence of evidence to support the non-moving party's case, the burden then shifts to the opposing party to produce "specific evidence, through affidavits or admissible discovery material, to show that the dispute exists."  *Bhan v. NME Hosp. Inc.*, 929

F.2d 1404, 1409 (9th Cir. 1991). A complete failure of proof concerning an essential element of the non-moving party's case renders all other facts immaterial. *See Celotex*, 477 U.S. at 323.

Where the moving party instead bears the burden of proof on an issue at trial, "it must, in order to discharge its burden of showing that no genuine issue of material fact remains, make a prima facie showing in support of its position on that issue. That is, the moving party must prevent evidence that, if uncontroverted at trial, would entitle it to prevail on that issue. Once it has done so, the non-moving party must set forth specific facts controverting the moving party's prima facie case." *Sabatino v. Liberty Life Assur. Co. of Boston*, 286 F. Supp. 2d 1222, 1229 (N.D. Cal. 2003) (citing *UA Local 343 v. Nor-Cal Plumbing, Inc.*, 48 F.3d 1465, 1471 (9th Cir. 1994)).

**B.      Plaintiffs' Procedural Due Process Claims**

The Fourteenth Amendment to the United States Constitution protects individuals from the deprivation of liberty or property by the government without due process. A § 1983 claim based upon procedural due process contains three elements: (1) a liberty or property interest protected by the United States Constitution; (2) a deprivation of that interest by the government; and (3) a denial of adequate procedural protections. *See Portman v. County of Santa Clara*, 995 F.2d 898, 904 (9th Cir. 1993).

To state a claim under the Due Process Clause, Plaintiff must first establish that she possessed a property interest deserving of constitutional protection. *See Brewster v. Bd. of Educ. of the Lynwood Unified Sch. Dist.*, 149 F.3d 971, 982 (9th Cir. 1998); *see also Gilbert v. Homar*, 520 U.S. 924, 928-29 (1997). If a property interest exists, the essential requirements of due process are notice and opportunity to respond. *See Cleveland Bd. of Educ. v. Loudermill et al.*,

470 U.S. 532, 546 (1985).  The Due Process Clause does not create substantive property rights; property rights are defined instead by reference to state law.  *See Portman*, 995 F.2d at 904.

To determine whether Plaintiff's due process rights were violated, the Court must necessarily determine whether Plaintiff possessed a constitutionally-protected property interest in continued employment.  *See Dyack v. Commonwealth of N. Mariana Islands*, 317 F.3d 1030, 1033 (9th Cir. 2003) (citing *Loudermill*, 470 U.S. at 538).  "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. [S]he must have more than a unilateral expectation of it. [S]he must, instead, have a legitimate claim or entitlement to it."  *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972); *see also Sonoda v. Cabrera*, 255 F.3d 1035, 1040 (9th Cir. 2001) ("An individual 'has a constitutionally protected property interest in continued employment . . . if he has a reasonable expectation or a 'legitimate claim of entitlement' to it, rather than a mere 'unilateral expectation.'") (citation omitted).

In Idaho, unless an employee is hired pursuant to a contract which specifies the duration of the employment or limits the reasons for which an employee may be discharged, the employment is presumed to be at the will of either party and the employer may terminate the relationship at any time without incurring liability.  *See Bollinger v. Fall River Rural Elec. Coop., Inc.*, 272 P.3d 1263, 1269 (Idaho 2012).  This presumption, however, may be rebutted by express or implied contract.  *See id.*

Here, Plaintiff claims that she has two distinct property interests in her employment with Valley County – first, that she enjoyed a reasonable expectation of continued employment, subject to discharge only for good cause; and, second, that she enjoyed a reasonable expectation

of reinstatement to employment, even if she had been legitimately laid off as a result of a

reduction in force in the first place. *See* Pl.'s Reply in Supp. of MPSJ, p. 2 (Docket No. 33).

Defendants argue that Plaintiff had no such property interests and, therefore, her procedural due

process claims should be dismissed. *See* Defs.' Mem. in Supp. of MSJ, pp. 5-10, 12-13 (Docket

No. 23, Att. 1).

  1. <u>Alleged Property Interest in Continued Employment</u>

  Chief U.S. Magistrate Judge Candy W. Dale decided a case in 2013 on similar facts, in

which Judge Dale ruled that a Valley County employee did have a property interest in continued

employment with the County.[1] *Brown v. Valley County*, 2013 WL 1453368 (D. Idaho 2013).

  In *Brown*, the plaintiff county employee sued Valley County under 42 U.S.C. § 1983 for

deprivation of due process arising out of a claimed constitutional property interest in his

employment. While the plaintiff conceded he did not have a contractual right to continued

employment, he argued that he nonetheless held a legitimate claim of entitlement to continued

employment based upon the entirety of Valley County's policy manual provisions[2] which

rebutted any presumption under Idaho law that his employment status was at-will. In turn, the

parties filed cross-motions for summary judgment on the issue of whether the plaintiff had a

---

  [1] Plaintiff not only cites to *Brown* in support for her Motion for Partial Summary
Judgment (and in opposition to Defendants' Motion for Summary Judgment), she also attempts
to use *Brown* to estop Defendants from re-litigating the issues presented in that case via their
opposition to her Motion for Partial Summary Judgment and, presumably, their own Motion for
Summary Judgment. *See* Pl.'s Mem. in Supp. of MPSJ, pp. 4-5 (Docket No. 22, Att. 4).

  [2] By all accounts, the policy manual at issue in *Brown* is identical to the Manual here,
with the plaintiff in *Brown* pointing to § IV(A)(1) of the policy manual limiting discharge
"except for cause related to performance of [your] job duties or other violations of the policy."
*Compare Brown*, 2013 WL 1453368 at *5, *with* Manual at p. 9 (attached as Ex. A to Pl.'s
MPSJ) (Docket No. 22, Att. 3).

**MEMORANDUM DECISION AND ORDER - 8**

constitutionally-protected property interest in continued employment.  Judge Dale said there was such a property interest as a matter of law based on the language of policy manual:

> For the above reasons, the Court finds as a matter of law that the Valley County Policy Manual, viewed as a whole, is not susceptible to two otherwise reasonable interpretations.  While the Policy Manual does state it is not a contract, elsewhere in the Policy Manual, and in a self-contained paragraph, it states that employees past their introductory period could be discharged only for cause related to performance of job duties or other violations of the policies set forth in the policy Manual.  Although Valley County retained discretion to change the policies, [the plaintiff] was expressly required to follow the policies stated in the Policy Manual.  And [the plaintiff] did not sign an acknowledgment stating he understood his employment was "at-will," nor did the Policy Manual contain any other provision explaining [the plaintiff] could be terminated from employment for any reason, or for no reason, or at any time or manner.  Because the Policy Manual limited the reasons for which Brown could be discharged, Brown was not an at-will employee and had a protected property interest in his continued employment.

*Brown*, 2013 WL 1453368 at *10.

Thus, based upon the arguments (and the unique facts applied to those arguments) presented in *Brown* – namely, whether, after the completion of a 90-day introductory period, the plaintiff could only be discharged for cause pursuant to Valley County's policy manual – Judge Dale found that, although plaintiff was not an at-will employee, he did have a protected property interest in continued employment with Valley County.  Judge Dale's well-reasoned decision in *Brown* may very well apply to help resolve the parties' dispositive motions here.  *See, e.g.*, *Sommer v. Elmore County*, 2013 WL 5274223 (D. Idaho) (applying *Brown* reasoning to determine if plaintiff/employee had a property interest in continued employment with Elmore County).  However, this case *also* must take into account the impact of the Manual's explicit language relating to reductions in force – something altogether unaddressed in *Brown*.

The Manual prescribes that Valley County employees are not to be "discharged from their positions except for cause related to performance of their job duties" and that "discharge[s]

for cause shall be subject to the appeal procedure" set forth in the Manual. Manual at p. 9 (attached as Ex. A to Pl.'s MPSJ) (Docket No. 22, Att. 3). These provisions suggest that Plaintiff, in fact, enjoys a protected property interest in continued employment with Valley County. There is an impediment to that conclusion, however, found further on in the same "Employment Status" section of the Manual, where it is provided that employment changes "which are the result of budgetary needs, *reductions in force*, reorganization of work duties through transfer or reassignment, or general changes in the terms or conditions of employment or of benefit offerings *shall not be subject to the appeal procedure*" set forth in the Manual. *Id*. at p. 10. In other words, the Manual's "for cause" terminology is not intended to be an absolute, as an exception to that particular proviso exists in the circumstance of a reduction in force. Hence, under the terms of the Manual, Plaintiff had a protected property interest in continued employment with Valley County *unless* a bona fide reduction in force took place.[3] *See, e.g.*, *Wong v. Bd. of Regents of Univ. of Cal.*, 13 Fed. Appx. 514, 515 (9th Cir. 2001) ("The relevant

---

[3]  Though she first moved for summary judgment on the issue of her alleged property interest in continued employment with Valley County, Plaintiff's argument seemed to evolve to acknowledge how a valid reduction in force might impact such a claim. *See* Pl.'s Reply in Supp. of MPSJ, p. 2 (Docket No. 33) ("With respect to the property interest in continued employment, Defendants maintain that Plaintiff had no such right because she was laid off as a result of a legitimate RIF. However, this is the essential dispute in the case – whether the ostensible RIF was legitimate or pretext. This is a matter for the fact-finder, as more fully set out in Plaintiff's response to the Defendants' Motion for Summary Judgment. If the RIF was, in fact, determined to be pretext, then Plaintiff's due process rights were violated."); Pl.'s Resp. to Defs.' MSJ, pp. 3, 8, & 9 (Docket No. 25) ("[T]here is a plethora of authority standing for the proposition that motivation in the context of alleged pretext is generally a matter for the jury. . . . . All of these factors cited above constitute substantial circumstantial evidence that the RIF in issue was, in fact, a discharge for cause. This brings into question the motivation behind the termination which, traditionally, is not a matter for resolution at the summary judgment stage. . . . . As argued above, it is a jury issue as to whether the ostensible RIF here was, in fact, a discharge for cause which requires a due process hearing as provided by the Manual. . . . . If the jury concludes that the RIF was a pretext for a discharge for cause, Plaintiff prevails on this claim.").

**MEMORANDUM DECISION AND ORDER - 10**

employee manuals indicate that Wong's property interest in continued employment did not extend to his specific position or against layoff, as the manuals give the University broad discretion to lay off an employee whenever it is 'necessary due to lack of work or lack of funds'" and there was "no evidence that the layoff was directed at Wong or maliciously motivated, as the Medical Center instituted the layoff to achieve expense reduction.") (internal citations omitted).[4] Accordingly, whether on these facts Plaintiff had a property interest in continued employment with Valley County hinges on whether she was laid off as a pretext or due to an entirely neutral reduction in force.

The record set out by the dueling motions for summary judgment – reflected largely in the parties' arguments (outlined in bullet-point format below) – reveals questions of material fact that preclude a finding that Plaintiff's termination was or was not part of a genuine reduction in force. The pertinent details include:

<u>Plaintiff's Contentions</u>:

- "The RIF itself first came up formally in an Executive Session in the afternoon of the Commissioners' August 15, 2011 meeting. There is no recording of this Executive Session. Defendant Young presented the proposal. The RIF was presented as a consolidation of two clerk positions consummated without notice to either employee affected, Plaintiff and Rhonda Komula, until after it was authorized by the Board. There was one person 'RIFed' – the Plaintiff." Pl.'s Resp. to Defs.' MSJ, p. 4 (Docket No. 25).

- "Plaintiff was terminated and escorted out of her work site immediately after the Executive Session. Noteworthy is the fact that the Defendants have

---

[4]  Citing *Allen v. City of Bevery Hills*, 911 F.2d 367, 371-72 (9th Cir. 1990), Defendants argue that, so long as the Manual gives Valley County the discretion to eliminate positions through reductions in force, its subjective motivation for doing so is irrelevant. *See* Defs.' Reply in Supp. of MSJ, p. 2 (Docket No. 34).  If so, this would potentially swallow up any protections afforded to an employee who can only be dismissed for cause – that is, an employer can circumvent such protections simply by claiming a reduction in force.  The undersigned is not prepared to make such a sweeping finding in this instance.

produced no document, including emails, which reflect the discussion between Cruikshank, Banbury, and Young over the RIF." Pl.'s Resp. to Defs.' MSJ, p. 5 (Docket No. 25) (internal citations omitted).

- "[A]n inference [exists] that Banbury harbored resentment against the Plaintiff, that is, she was 'out of line for going to the Commissioners' about the bat problem. The inconsistent explanations as to the genesis of the RIF, as well as, the timing and lack of documentation, further support the inference of a retaliatory motive. . . . . [P]roximity in time between the protected activity and the alleged retaliation is circumstantial evidence of motive and sufficient alone to defeat summary judgment." Pl.'s Resp. to Defs.' MSJ, pp. 5-6 (Docket No. 25); *see also* Pl.'s SODF No. 10 (Docket No. 26).

- "The termination of Plaintiff's employment was a completely unique event to the extent that a full-time employee was terminated. Such a circumstance had never occurred before or after this particular RIF to the memory of the individual Defendants. There was a general reduction in force in effect at the time whereby vacant positions were not filled. Commissioner Winkle was under the impression that Young's RIF proposal during the August 15th Executive Session was consistent with the general reduction in force plan." Pl.'s Resp. to Defs.' MSJ, p. 6 (Docket No. 25) (internal citations omitted).

- "[T]here exists no written record in the form of email communications, memoranda, report, or note that reflects the thinking and/or chain of events that led to Plaintiff's termination. This was all done behind 'closed doors,' so to speak, shortly after Plaintiff sent her August 2nd email communication regarding the bat problem. Counsel for Plaintiff has reviewed thousands of email communications by and between the individually-named Defendants from August 2nd through August 16th, 2011, and not one mentions anything about this consolidation of jobs and RIF." Pl.'s Resp. to Defs.' MSJ, p. 6 (Docket No. 25).

- "Kormula, prior to the RIF, worked under Clerk Banbury and, as mentioned above, Plaintiff worked under Treasurer Young. Komula moved to the Treasurer's Office and subsequently was promoted. In February of 2012, a new Deputy Recorder position was created and filled in the Clerk's Office. This was one of the positions that Plaintiff applied for, but was deemed less qualified than the person hired, Joel Castle." Pl.'s Resp. to Defs.' MSJ, p. 7 (Docket No. 25).

- "In the Treasurer's Office, there were four employees, including the Plaintiff, prior to the RIF. There have been and are currently four employees in this office, including Rhonda Komula. The indigent clerk work that Rhonda

Komula was performing at the time of the RIF was subsequently returned to the Clerk's Office, but then latter assumed by a new hire, Tammi Richardson, in the Treasurer's Office. The point is that as of early 2012, both the Clerk's Office and the Treasurer's Office had the same number of staff then as they each had prior to the RIF, so there was essentially no reduction in force." Pl.'s Resp. to Defs.' MSJ, p. 7 (Docket No. 25) (internal citations omitted).

• "The ostensible justification for Plaintiff's termination by the Defendants is [that Plaintiff's position no longer required a full-time employee because the Treasurer's Office was no longer performing human resources work.] The fact of the matter is that Plaintiff had not been performing human resources work for several months prior to her termination. In fact, she was busy working full-time, performing primarily customer service responsibilities, which comprised about 95% of her job." Pl.'s Resp. to Defs.' MSJ, pp. 7-8 (Docket No. 25) (internal citations omitted); *see also* Pl.'s SODF No. 3 (Docket No. 26).

• "Commissioner Winkle was taken by surprise when he learned that Plaintiff was terminated after the Executive Session on August 15, 2011. The proposed RIF was presented as something routine and in accord with the general RIF plan. After the vote, he then learned that Plaintiff was to be immediately terminated and escorted out of the Treasurer's Office as if it was a discharge. Winkle sensed that Plaintiff was the object of retaliation over the August 2nd email communication; Defendant Banbury admitted to Winkle his displeasure over this communication. Commissioner Winkle recognized that Plaintiff's termination was not right and was, in fact, manipulated through a pretextual RIF." Pl.'s Resp. to Defs.' MSJ, p. 8 (Docket No. 25) (internal citations omitted); *see also* Pl.'s SODF Nos. 4 & 10 (Docket No. 26).

Defendants' Contentions:

• "The Valley County board of Commissioners reduced the County budget for the fiscal year ending on September 30, 2012 by approximately 23%. The Board reduced the budget in response to a downturn in the economy, citizen requests that the budget be reduced, and the need to increase efficiency and reduce taxes. The Board implemented the reduced budget in part through a reduction in force ('RIF')." Defs.' Mem. in Supp. of MSJ, p. 3 (Docket No. 23, Att. 1) (internal citations omitted); *see also* Defs.' SOUF Nos. 6-8 (Docket No. 23, Att. 2); Defs.' Resp. to Pl.'s MPSJ, p. 3 (Docket No. 24). Defs.' Reply in Supp. of MSJ, p. 2 (Docket No. 34).

• "The RIF was accomplished in part by leaving unessential positions that were vacated unfilled and removing those positions from the budget." Defs.'

Mem. in Supp. of MSJ, p. 3 (Docket No. 23, Att. 1) (internal citations omitted); *see also* Defs.' SOUF No. 9 (Docket No. 23, Att. 2); Defs.' Reply in Supp. of MSJ, p. 2 (Docket No. 34).

- "The Board also requested each department head to determine whether any positions in his or her office could be consolidated or eliminated." Defs.' Mem. in Supp. of MSJ, p. 3 (Docket No. 23, Att. 1) (internal citations omitted); *see also* Defs.' SOUF No. 10 (Docket No. 23, Att. 2); Defs.' Reply in Supp. of MSJ, p. 2 (Docket No. 34).

- "The Treasurer, Glenna Young, informed the Board that her office only had enough work to keep 3 ½ of her four full-time employees busy, but that she needed four people in the Treasurer's office to be available to answer phones and help customers. Plaintiff's position no longer required a full-time employee because the Treasurer's office was no longer responsible for human resources. The Clerk's office also had one full-time Indigency Clerk position that required only a part-time employee. Defs.' Mem. in Supp. of MSJ, p. 3 (Docket No. 23, Att. 1) (internal citations omitted); *see also* Defs.' SOUF Nos. 11-12 (Docket No. 23, Att. 2); Defs.' Reply in Supp. of MSJ, p. 2 (Docket No. 34).

- "The Board decided to consolidate the two full-time positions in the Clerk's and Treasurer's offices that required only part-time work into one full-time position. The primary job responsibilities of the two positions would be reassigned to one position and one of the full-time employees would be laid off. The Board determined that consolidating the two positions in this manner would reduce the budget without affecting crucial services provided by Valley County." Defs.' Mem. in Supp. of MSJ, pp. 3-4 (Docket No. 23, Att. 1) (internal citations omitted); *see also* Defs.' SOUF No. 13 (Docket No. 23, Att. 2); Defs.' Reply in Supp. of MSJ, p. 2 (Docket No. 34).

- "The Board ultimately decided to retain the employee who held the Indigency Clerk position, Rhonda Komula, to fill the consolidated position. Rhonda had more seniority than Plaintiff, knew the Treasurer's office bookkeeping system, and had the expertise necessary to perform indigency work. Plaintiff, on the other hand, was the least senor employee in the Treasurer's office and did not have knowledge or experience in performing indigency work." Defs.' Mem. in Supp. of MSJ, p. 4 (Docket No. 23, Att. 1) (internal citations omitted); *see also* Defs.' SOUF Nos. 14-16 (Docket No. 23, Att. 2); Defs.' Reply in Supp. of MSJ, p. 2 (Docket No. 34).

- "The Board unanimously approved the RIF, consolidation, and layoff of plaintiff at a regular meeting held on August 15, 2011." Defs.' Mem. in Supp. of MSJ, p. 4 (Docket No. 23, Att. 1) (internal citations omitted).

**MEMORANDUM DECISION AND ORDER - 14**

- "No new employee was hired to replace Plaintiff and Plaintiff's position was not subsequently re-established." Defs.' Reply in Supp. of MSJ, p. 2 (Docket No. 34) (internal citations omitted).

- "There is no evidence to support Plaintiff's claim that the RIF was false and pretextual or that the bat email was the reason Plaintiff's position was eliminated and Plaintiff was laid off in the RIF. The evidence instead shows that the bat email played no role in the decisions to eliminate Plaintiff's position and to lay Plaintiff off. Plaintiff was actually told that she did nothing wrong by sending the email and 'not to worry about it.' The RIF was not retaliation for Plaintiff's email." Defs.' Resp. to Pl.'s MPSJ, pp. 4-5 (Docket No. 24) (internal citations omitted); *see also* Defs.' SOUF No. 24 (Docket No. 23, Att. 2).

- "The fact that Plaintiff was the only employee laid off by the RIF is also insufficient to establish pretext." Defs.' Resp. to Pl.'s MPSJ, p. 5 (Docket No. 24).

- "Plaintiff argues there was no real RIF because Rhonda Komula, the employee who filled the consolidated position, was relocated to the Treasurer's office. However, one of the conditions to consolidating the positions was that the employee who filled the consolidated position be physically located in the Treasurer's office because it needed 'four bodies' available to answer phones and help customers. Komula performed Indigency work for the Clerk's office even though she was phys8ically located in the Treasurer's office. Komula also performed some of Plaintiff's former job duties because those duties still needed to be performed after Plaintiff was laid off." Defs.' Reply in Supp. of MSJ, p. 3 (Docket No. 34) (internal citations omitted).

- "Plaintiff contends there was 'no real RIF' because Komula was subsequently promoted. Komula was promoted nearly two years after Plaintiff was laid off because the Chief Deputy Treasurer resigned." Defs.' Reply in Supp. of MSJ, p. 3 (Docket No. 34) (internal citations omitted).

- "Plaintiff argues there was no RIF because a new Deputy Recorder position was created in 2012. However, no new Deputy Recorder position was created – the position existed and became open." Defs.' Reply in Supp. of MSJ, p. 3 (Docket No. 34) (internal citations omitted).

- "Plaintiff argues there was no RIF because there were four employees in both the Treasurer's and Clerk's offices before and after the RIF. However, after the RIF, one of the four employees in the Treasurer's office was performing

part-time indigency work for the Clerk's office. There is no evidence the Clerk's office had the same number of positions before and after the RIF." Defs.' Reply in Supp. of MSJ, p. 4 (Docket No. 34) (internal citations omitted).

- "Plaintiff also claims there was no RIF because the indigency work was returned to the Clerk's office. When Komula was promoted nearly two years after the RIF, the indigency work was temporarily assigned to an employee in the Clerk's office. However, after Komula's replacement was hired, the indigency work was returned to the Treasurer's office." Defs.' Reply in Supp. of MSJ, p. 4 (Docket No. 34) (internal citations omitted).

- "The Board considered consolidating other positions, but those consolidations were ultimately determined to be unfeasible." Defs.' Reply in Supp. of MSJ, p. 4 (Docket No. 34) (internal citations omitted).

- "[T]hat Plaintiff considered herself busy does not change the fact that, in response to the Board's request that department heads determine whether any positions could be consolidated or eliminated, the Treasurer determined that she needed only a half-time employee for one of her full-time positions." Defs.' Reply in Supp. of MSJ, p. 4 (Docket No. 34).

In short, the parties' arguments and counter-arguments on the fundamental issue of whether the reduction in force that led to Plaintiff's dismissal was a sham could not be further apart. The reduction in force may have been a subterfuge for terminating Plaintiff without cause/due process. Or, just the opposite could be true. However, the current record does not make either of those findings indisputably clear to warrant this Court saying so as a matter of law. As a result, it likewise cannot be said as a matter of law that Plaintiff has a property interest in continued employment with Valley County. Plaintiff's Motion for Partial Summary Judgment and Defendants' Motion for Summary Judgment are denied in this respect.[5]

---

[5] This finding subsumes Defendants' alternate argument that Plaintiff was not "discharged" (as that term is used in the Manual), but that her position was consolidated and she was laid off in a true reduction in force. *See* Defs.' Mem. in Supp. of MSJ, pp. 8-10 (Docket No. 23, Att. 1). This is a fact-dependent question for the reasons already stated in this Memorandum Decision and Order. The same goes for Defendants' argument that, "in the context of a RIF," Plaintiff received all the process due to her. *Id*. at pp. 10-12. Even so, Plaintiff plainly disputes

2.    Plaintiff's Alleged Property Interest in Reinstatement

It is possible for a property interest to exist not only in continued employment, but also in reinstatement or re-employment. Again, in *Brown*, Judge Dale recognized as much when analyzing Supreme Court precedent on the issue:

> In *Roth*, the Supreme Court recognized that a public employee who may be discharged only for cause has a constitutionally protected property interest in his tenure and cannot be deprived of his employment without due process. However, the Supreme Court held in *Roth* that the university professor did not have a property interest in re-employment for the next year, in part because "no state statute or University rule or policy" secured his interest in re-employment. Therefore, it stands to reason that the converse is true – a policy may establish an interest in re-employment or continued employment, as the case may be.

*Brown*, 2013 WL 1453368 at *4, n.3.

In this case, the Manual provides that employees laid off due to a reduction in force "shall retain a first right to return in the event of work force rebuilding" for one year from the date of separation, but "only for work for which they are fully qualified." Manual at p. 25 (attached as Ex. A to Pl.'s MPSJ) (Docket No. 22, Att. 3). In support of their Motion for Summary Judgment, Defendants argue that there is no evidence that (1) Valley County rebuilt its workforce, (2) the positions for which Plaintiffs applied were part of a work force rebuilding, or (3) Plaintiff was fully qualified for the positions for which she applied. *See* Defs.' Mem. in Supp. of MSJ, pp. 12-13 (Docket No. 23, Att. 1).[6] As such, Defendants contend that "[t]he

_____

that she was given any meaningful opportunity to challenge the alleged reduction in force. *See* Pl.'s Resp. t Defs.' MSJ, pp. 9-10 (Docket No. 25); *see also* Pl.'s SODF Nos. 5-6 (Docket No. 26) (Plaintiff disputing she was (1) given any pre-termination opportunity to question or contest her dismissal on August 15, 2011, and (2) eligible for any grievance process under Manual because she was no longer employee of Valley County).

[6] Defendants alternatively argue that, (1) because the Manual (in an earlier section) grants complete discretion to the Valley County Board of Commissioners regarding whether to grant reinstatement preferences in the event of a reduction of force, and (2) because there is no evidence that the Valley County Board of Commissioners granted such a preference, Plaintiff

conditions precedent to any right to re-employment therefore were not satisfied and Plaintiff did not have a vested property interest in re-employment." *Id.* at p. 13.

Setting aside the material factual issues surrounding the validity of Valley County's alleged reduction in force (discussed *supra*) and drawing all reasonable inferences in Plaintiff's favor as the Court is required to do, the question of whether a "work force rebuilding" took place in Valley County within one year of Plaintiff being laid off is necessarily a fact question, and a disputed fact question, precluding the entry of summary judgment in Defendants' favor. Also, whether Plaintiff was indeed "fully qualified" for the positions she applied for during this same time is another fact question inappropriate for resolution at this time. *Compare* Defs.' SOUF No. 19 (Docket No. 23, Att. 2), *with* Pl.'s SODF No. 7 (Docket No. 26).[7] Together, these reasons prevent a finding that Plaintiff either had, or did not have, a property interest in reinstatement. Defendants' Motion for Summary Judgment is denied in this respect.[8,9]

---

has no legitimate claim of entitlement to reinstatement. *See* Defs.' Mem. in Supp. of MSJ, p. 12 (Docket No. 23, Att. 1) (citing/quoting Manual at p. 13 (attached as Ex. A to Pl.'s MPSJ) (Docket No. 22, Att. 3)). Except, such an argument fails to take into account the Manual's subsequently-identified "Reinstatement Preference" (that, even, Defendants go on to discuss in their briefing). The Manual' provisions must be read in harmony with one another; doing so reveals that Defendants' alternate argument on this point is misplaced.

[7] Defendants further argue that Plaintiff "was not as qualified as" other applicants when she was not selected fill other positions with Valley County after being laid off. *See* Defs.' Mem. in Supp. of MSJ, pp. 4-5 (Docket No. 23, Att. 1); Defs.' SOUF No. 19 (Docket No. 23, Att. 2). Whether this equates as a matter of law to Plaintiff not being "fully qualified" for those same positions (as that term is used in the Manual) is currently unknown and not addressed in this Memorandum Decision and Order.

[8] The extent of Plaintiff's ability to protect whatever property interest in her reinstatement with Valley County – beyond simply being able to apply for certain employment positions (just like any other individual looking for work) considering her previous employ with Valley County – is not immediately obvious to the undersigned. For this reason, the Court cannot state as a matter of law that, even assuming a property interest in reinstatement with Valley County, Plaintiff was afforded adequate process, as Defendants alternatively contend. *See* Defs.' Mem. in Supp. of MSJ, p. 13 (Docket No. 23, Att. 1).

[9] The questions surrounding Plaintiff's right to reinstatement (and, thus, whether a clearly established right exists and the corresponding motivations behind Defendants' conduct

**C.     Plaintiffs' Substantive Due Process Claims**

 "To establish a substantive due process claim, a plaintiff must, as a threshold matter, show a government deprivation of life, liberty, or property." *Nunez v. City of Los Angeles*, 147 F.3d 867, 871 (9th Cir. 1988).  "The protections of substantive due process have for the most part been accorded to matters relating to marriage, family, procreation, and the right to bodily integrity." *Albright v. Oliver*, 510 U.S. 266, 272 (1994) (citation omitted).

Plaintiff does not explicitly assert that any rights/protections attendant to marriage, family, procreation, or bodily integrity were impacted by Defendants' decision to lay her off; instead, she argues that her substantive due process rights were violated when she was laid off and not re-hired because she exercised her right to free speech in sending her August 2, 2011 email about bats at the Building Department.  *See* Compl., p. 2 & ¶¶ 30, 40, 46-53 (Docket No. 1).  As framed, Plaintiff's substantive due process claim cannot stand.

First, even assuming that Plaintiff has a property interest in continued employment and/or reinstatement with Valley County (*see* discussion *supra*), any alleged violations of those rights are *procedural* due process violations, not *substantive* due process violations.  *See, e.g.*, *Taysom v. Bannock County*, 2013 WL 3322296, *10 (D. Idaho 2013) ("Even if Taysom could prove that she was unreasonably deprived of her employment, this is not the sort of violation that

vis á vis that right) further operate to preclude Defendants' general qualified immunity argument as to those Defendants sued in their individual capacity.  *See* Defs.' Mem. in Supp. of MSJ, pp. 13-14 (Docket No. 23, Att. 1).  Finally, (1) that the Valley County Board of Commissioners "establish[es] general policies for Valley County, and as such, *has primary authority to establish terms and conditions of employment with Valley County*" (Manual at p. 1 (attached as Ex. A to Pl.'s MPSJ) (Docket No. 22, Att. 3) (emphasis added)), coupled with (2) the actual decision not to reinstate Plaintiff, inject enough questions of fact to be unable to find as a matter of law that no custom/policy exists denying former employees reinstatement preferences – one of Defendants' retorts to Plaintiff's § 1983 claim for reinstatement against Valley County itself  *See* Defs.' Mem. in Supp. of MSJ, p. 14 (Docket No. 23, Att. 1).

substantive due process was intended to remedy.") (citing *Harrah Indep. Sch. Dist. v. Martin*, 440 U.S. 194, 195-99 (1979)); *Harms v. Jeffries*, 2013 WL 791452, *16, n.12 (D. Idaho 2013) ("Moreover, even if Plaintiff had established a property interest in continued employment, many courts have held that such interest is not so fundamental as to be protected by substantive due process, even where the employment termination is arbitrary, capricious, or pretextual.").  Said another way, such claims are subsumed by Plaintiff's procedural due process claims and the allegations related thereto.

Second, to the extent Plaintiff's substantive due process claims attempt to assert that her termination was the result of a curtailment of a fundamental constitutional right (free speech), they are preempted by her actual "violation of constitutional 'free speech'" claim.  *See Merrill v. County of Madera*, 2013 WL 1326542, *5 (E.D. Cal. 2013) ("Traditionally, courts have held that a substantive due process claim cannot be used to vindicate a constitutional right in a 42 U.S.C. § 1983 action if the plaintiff's claim could be analyzed under another explicit textual Constitutional source.") (citing, *inter alia*, *Hufford v. McEnaney*, 249 F.3d 1142, 1151 (9th Cir. 2001) (because First Amendment explicitly covers employment termination cases, First Amendment and not Substantive Due Process should guide analysis)).  Plaintiff seems to agree. *See* Pl.'s Resp. to MSJ, p. 13 (Docket No. 25, Att. 1) ("Plaintiff concedes that if her termination in violation of procedural due process had nothing to do with protected speech, or any other fundamental right, she would have no substantive due process claim.").  Said another way, such claims are subsumed by Plaintiff's First Amendment-related claims.

With all this in mind, Defendants' Motion for Summary Judgment is granted in this respect.  Plaintiff's substantive due process claims are dismissed.

**MEMORANDUM DECISION AND ORDER - 20**

**D.    Plaintiff's First Amendment-Related Claims**

Plaintiff alleges that, when she "voiced her concerns over the presence of a live bat in the Building Department," she was engaging in "protected speech" such that her allegedly-related termination violated her First Amendment Rights.  *See* Compl., ¶¶ 46-53, 70-76 (Docket No. 1). To state a claim against an employer for violation of the First Amendment, a plaintiff must show that (1) she engaged in protected speech; (2) the employer took "adverse employment action;" and (3) her speech was a "substantial or motivating" factor for the adverse employment action. *See Coszalter v. City of Salem*, 320 F.3d 968, 973 (9th Cir. 2003).

For the speech to be protected at step one, the court must determine (1) whether the speech at issue "'touch[ed] on a matter of public concern;'" if so, (2) whether "'the interests of the [employee], as a citizen, in commenting upon matters of public concern [outweighed] the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees;'" and (3) whether the employee spoke as a public employee or instead as a private citizen.  *See Posey v. Lake Pend Oreille School Dist. No. 84*, 546 F.3d 1121, 1127 (9th Cir. 2008).  Once the employee establishes the first three elements, the burden shifts – the government can escape liability showing that it would have taken the same action even in the absence of the protected conduct.  *See Keyser v. Sacramento City Unified School Dist.*, 265 F.3d 741, 750 (9th Cir. 2001).  Here, Plaintiff's email about bats in the Building Department does not speak to a matter of public concern.

Whether an employee's speech addresses a matter of public concern is a pure question of law that must be determined "by the content, form, and context of a given statement, as revealed by the whole record."  *Connick v. Myers*, 461 U.S. 138, 147-48 & n.7 (1983).  Of these three

**MEMORANDUM DECISION AND ORDER - 21**

factors, the content of the speech is generally the most important.  *See Clairmont v. Sound Mental Health*, 632 F.3d 1091, 1103 (9th Cir. 2011).  "[S]peech that deals with 'individual personnel disputes and grievances' and that would be of 'no relevance to the public's evaluation of the performance of governmental agencies' is generally not of 'public concern.'" *Coszalter v. City of Salem*, 320 F.3d 968, 973 (9th Cir. 2003) (quoting *McKinley v. City of Eloy*, 705 F.2d 110, 1114 (9th Cir. 1983)).  In contrast, "[s]peech involves a matter of public concern when it can fairly be considered to relate to 'any matter of political, social, or other concern to the community.'" *Johnson v. Multnomah Cnty.*, 48 F.3d 420, 422 (9th Cir. 1995) (quoting *Connick*, 461 U.S. at 146).

With these principles in mind, it is evident that Plaintiff's August 2, 2011 email discussing the presence of bats in the Building Department over the course of two days is not a matter of public concern.  It neither highlights any wrongdoing within Valley County generally, nor helps the public evaluate the competency and/or performance of Valley County agencies specifically.  In short, at best, the email is an observation made by a Valley County employee; at worst, it is a personal complaint – either way, the email's contents do not objectively address matters of public concern.  *See, e.g.*, *Tucker v. City of New York*, 2011 WL 2893077, *4 (S.D.N.Y. 2011)* ("Despite plaintiff's efforts to characterize the presence of waterbugs, roaches, and rodents as 'public health' issues affecting 'the health and safety of his coworkers,' we find that the claims do not rise above the level of personal dissatisfaction with the conditions of Tucker's office.  There can be no meaningful allegation that an office infestation poses a serious threat to public health, nor that the pests at NYPCC interfered with the ability of employees to assist callers with poison control emergencies."); *Armstrong v. St. Joseph County Dept. of*

*Welfare*, 1990 WL 212390, *9 (N.D. Ind. 1990) (complaints about work environment, including fumes, smoke, odors, lack of ventilation, pigeons, insects, and insecticides "were not matters of public concern, but instead related solely to her private concerns about her own health and working conditions.").

Because the speech involved in Plaintiff's First Amendment-related claims do not involve matters of public concern, Defendants' Motion for Summary Judgment is granted in this respect. Plaintiff's First Amendment-related claims are dismissed.

**E.       Plaintiffs' State Claims**

Plaintiff's Complaint sets forth three causes of action similar in scope to her federal causes of action, but tethered alternatively to Idaho's Constitution. *See* Compl., ¶¶ 54-76 (Docket No. 1). This Court previously has considered the issue of whether the Idaho Constitution provides for a private cause of action for monetary damages based on an alleged violation of a person's civil liberties. *Boren v. City of Nampa*, 2006 WL 2413840, *10 (D. Idaho 2006) (citing *Katzberg v. Regents of the Univ. of California*, 58 P.3d 339 (Cal. 2002); *Spurrell v. Bloch*, 701 P.2d 529 (Wash. 1985)). Even though acknowledging that the Supreme Court of Idaho "has never specifically addressed this issue," in *Boren,* this Court was "confident that [the Idaho Supreme Court] would not find a private cause of action." *Id*.; *see also Greenfield v. City of Post Falls Municipality*, 2014 WL 1343478, *10 (D. Idaho 2014) ("This Court has previously held that no direct cause of action exists for violations of the Idaho Constitution."); *Young v. Young*, 2009 WL 909241, *9 (D. Idaho 2009) (explaining that, "[t]o the extent Counts 3 and 4 set forth a claim for a violation of Idaho's Constitution, a civil cause of action for damages of a state constitutional right does not exist," and because such "State constitutional claims are not

cognizable under Idaho law . . . this claim must be dismissed as to all defendants") (citing *State v. Charpentier*, 962 P.2d 1033, 1037 (1998) (rights of individuals under Idaho Constitution not greater than those provided under the federal constitution)).

No direct cause of action exists for violations of the Idaho Constitution. Defendants' Motion for Summary Judgment is granted in this respect and Plaintiff's state claims are dismissed.

## III.  ORDER

Based on the foregoing, IT IS HEREBY ORDERED that:

1.      Plaintiff's Motion for Partial Summary Judgment (Docket No. 22) is DENIED; and,

2.      Defendants' Motion for Summary Judgment (Docket No. 23) is GRANTED, in part, and DENIED, in part, as follows:

a.      Plaintiff's federal due process claims (federal Counts I and II) are not dismissed; Defendants' Motion for Summary Judgment is denied in this respect.

b.      Plaintiff's violation of constitutional "free speech" claim (federal Count III), and state claims (state Counts I-III) are dismissed; Defendants' Motion for Summary Judgment is granted in this respect.

**Consistent with Docket No. 20, the parties shall participate in a mediation or settlement conference within forty-five (45) days of this Memorandum Decision and Order.**

**Additionally, Plaintiff's counsel shall contact courtroom deputy Lynette Case at (208) 334-9023 within one week following this Memorandum Decision and Order to make**

**MEMORANDUM DECISION AND ORDER - 24**

**arrangements for a telephone scheduling conference in which the trial and pretrial conference shall be set in the event the mediation/settlement conference is unsuccessful.**

DATED:  **September 4, 2014**



_____
Honorable Ronald E. Bush
U. S. Magistrate Judge